DAVIS *v.* RODMAN.

Opinion delivered February 14, 1921.

1. PHYSICIANS AND SURGEONS—NEGLIGENT SPREAD OF DISEASE.—A complaint against physicians attending plaintiff's son, a typhoid fever patient, for negligence in failing to prevent the spread of typhoid fever to plaintiff's other children, *held* insufficient for failure to allege specific facts showing that the negligence complained of was the direct and proximate cause of such children contracting the disease.

2. PHYSICIANS AND SURGEONS—DUTY TO AVOID SPREAD OF INFECTIOUS DISEASE.—It is the duty of physicians who are attending patients afflicted with contagious or infectious diseases not to do any negligent act that would tend to spread the infection, and to exercise reasonable care to advise members of the family and others liable to be exposed thereto of the nature of the disease and the danger of exposure.

3. PHYSICIANS AND SURGEONS—LIABILITY FOR DAMAGES.—One who, by reason of his professional relation is placed in a position where it becomes his duty to exercise ordinary care to protect others from danger is liable in damages to those who are injured by reason of his failure to exercise such care.

4. PHYSICIANS AND SURGEONS—DUTY TO WARN ATTENDANTS.—It was the duty of a physician attending a typhoid fever patient to notify the family, nurses and attendants of the nature and character of the disease, to warn them of the danger of infection, and to instruct them as to the usual approved methods for the prevention of the spread of the disease.

5. PHYSICIANS AND SURGEONS — VIOLATION OF RULE OF BOARD OF HEALTH.—An allegation that attending physicians violated a rule of the State Board of Health in negligently failing to report a case of communicable disease, without alleging that such negligence was the proximate cause of the injury of which plaintiffs complain, *held* insufficient.

6. PHYSICIANS AND SURGEONS—NEGLIGENCE—PLEADING.—An allegation that defendant physicians were negligent in advising plain-

tiffs to put their son, a typhoid fever patient, among plaintiff's other children, who subsequently became ill of the same disease, without alleging that such negligent exposure of the other children was the direct proximate cause of their illness was insufficient to state a cause of action, especially where the complaint alleged another source of infection.

7. PHYSICIANS AND SURGEONS—FAILURE TO INOCULATE PERSONS EXPOSED TO TYPHOID FEVER.—An allegation that defendant physicians negligently failed to inoculate the parents, their minor children, the attending nurses, and other persons exposed to typhoid fever, was insufficient both because it failed to allege that plaintiffs requested defendants to inoculate them or their children, or that plaintiffs would have consented thereto if defendants had suggested it, and because the question whether the inoculation should be resorted to is a matter solely within the judgment and discretion of the attending physicians under the circumstances of each particular case.

Appeal from Independence Circuit Court; *D. H. Coleman,* Judge; affirmed.

*J. R. Alexander* and *W. K. Ruddell,* for appellants.

1. The court erred in sustaining the demurrer and dismissing the complaint, as defendants were guilty of actionable negligence. It was the duty of defendants to protect plaintiffs from injury. 29 Cyc. 419.

2. The demurrer admits every allegation in the complaint to be true. 90 Ark. 158; 102 *Id.* 380; 104 *Id.* 466; 94 *Id.* 505; 94 *Id.* 453.

3. Defendants failed to take the precautions required by the board of health and are liable. Rules and Regulations State Board of Health, January 1, 1918, p. 16, § 92. They negligently failed to isolate the cases of typhoid fever or securely screen against flies. *Id.,* p. 16, § 89. The violation of a law made for the protection of persons against infection by the negligence of defendants make them liable. 15 L. R. A. (N. S.) 784-8. Assumption of risk was not available as a defense. 15 L. R. A. (N. S.) 784; 53 Ark. 201; 80 *Id.* 528; L. R. A. 1015 E 500 and note, p. 502.

4. Failure to vaccinate was negligence. 30 Cyc. 1576; 21 R. C. L. 385; 81 Am. Dec. 593.

5. Defendants liable because they failed to instruct plaintiffs. Rules and Regulations State Board of Health, January 1, 1918, p. 9, § 32 (b) ; 30 Cyc. 1577; 21 R. C. L. 389; 63 A. L. R. 655-61; 7 L. R. A. 566.

6. Plaintiffs had a right to rely on defendants' instructions. 30 Cyc. 1579; 21 R. C. L. 402; 5 A. L. R. 922, 925; 18 L. R. A. 627-31.

7. It was negligence to allow typhoid fever patients to go to the house of plaintiffs without warning. Rules and Regulations, *supra,* p. 16, § 92; 19 Am. Dec. 164-6; 7 L. R. A. (N. S.) 496-9; 30 Cyc. 1577. See, also, 54 Am. Dec. 547; 5 A. L. R. 922; 93 Am. St. Rep. 834-8. Typhoid fever is highly contagious. Prac. of Med. (5 ed.) pp. 1, 26. It was actionable negligence. 58 Ark. 401; 57 *Id.* 402; 122 *Id.* 570. It is the duty of doctors to guard against infection of diseases, and if they fail they are liable. 21 R. C. L. 389; 12 L. R. A. (N. S.) 752; cases *supra;* 7 L. R. A. (N. S.) 496-9.

*J. J & John B. McCaleb* and *Samuel C. Knight,* for appellees.

1. We agree with appellants' contention as to actionable negligence and their definitions, but with this qualification, that there must have been a failure on part of defendants to perform some duty imposed upon them which failure was the *proximate cause* of the injury complained of. 22 R. C. L., p. 110. None of the acts or failures here alleged, which occurred after appellees were called to treat the patients, was the proximate cause of the contagion. The question of vaccination was not an issue in the case, for there was allegation in the complaint that vaccination was customary and the usual mode of avoiding or preventing typhoid fever. Before an attending physician is justified in vaccinating a person, that person's consent is necessary and no such consent or even willingness is alleged. The allegation of failure to vaccinate does not state a cause of action and could not have been properly submitted to a jury. The more modern medical authorities hold that there is a se-

rious drawback to vaccination in typhoid fever cases. Forcheimer's Practice of Medicine; Sajou's Enc. of Medicine. Appellees had a perfect right to choose their course of treatment, whichever they perferred. 21 R. C. L. 383.

2. Failure to notify the county health officer was not actionable negligence. 21 L. R. A. (N. S.) 115.

3. Allowing Lawson Davis to be moved to the residence of appellants. The contention of appellants is without merit, and the cases cited are not in point. 19 Am. Dec. 164-6; 7 L. R. A. (N. S.) 496-9.

4. Failure to instruct plaintiffs as to the treatment and prevention of typhoid fever is not negligence. Act 96, Acts 1913, § 6; *Ib.*, § 29, Acts 1911. Courts and parties must take notice of the rules, acts and regulations of the duly constituted health boards, commissions, etc. 130 Ark. 453; 26 *Id.* 260; 90 *Id.* 343.

5. As to the *excreta* and other bodily secretions, the contentions of appellants are without merit. The rules and regulations pleaded by appellants give ample information for the care and disposition of such. 130 Ark. 453; 26 *Id.* 260; 90 *Id.* 343.

The complaint does not state a cause of action and the court properly sustained the demurrer.

WOOD, J. This action was brought by appellants against the appellees to recover damages. The appellants alleged in substance that the appellees were regularly licensed and practicing physicians associated together as partners and doing a general practice of medicine at Newark and vicinity in Independence County, Arkansas; that appellants were man and wife, having a family of six minor children, and two adult married sons, who lived in their own homes apart from the appellants; that one of these sons, Curtis Davis, on June 15, 1919, was stricken with typhoid fever; that their son Lawson nursed him and was also, on July 15, 1919, stricken with typhoid fever; that the appellees were the attending physicians, and as such they negligently and wilfully

failed to notify the county health officer that typhoid
fever was at the residence of Curtis and Lawson Davis;
that they failed to post notices in front and at the rear
of the residences of Curtis and Lawson Davis and failed
to instruct the patients and their attendants, appellants,
and other nurses in all the necessary sanitary measures
for them to observe in order to prevent the spread of
the disease; that they failed to vaccinate the appellants,
and other nurses, attendants, and all other persons who
had been exposed to the disease; that they failed to iso-
late the patients in a room to themselves and to screen
the room from flies; that they failed to have buried or
disinfected the secretions and excretions from the body
of the patients and failed to instruct the attendants to
carry out and execute all the rules and regulations of
the board of health pertaining to and necessary to pre-
vent the spread of typhoid germs, which it was their
duty to do, and ignored all precautions and sanitary
measures necessary to prevent the spread of the disease,
which was contagious; that appellees advised the appel-
lants to move the patients from their own homes to the
homes of appellants, which appellants did; that the ap-
pellees failed to notify the appellants that typhoid fever
was a contagious disease and failed to take the precau-
tions above set forth to prevent the spread of the dis-
ease; that as a result of appellees' negligence as above
set forth, appellant, N. A. Davis, on the 12th day of Oc-
tober, 1919, became infected with typhoid germs, from
which she suffered great physical pain and mental an-
guish resulting in permanent injury to her health, all of
which, together with the sums she was compelled to ex-
pend for nursing, medicine and doctors' bills, damaged
her in the sum of $3,000; that the minor sons, Paul and
Dallas Davis, as a result of the negligence above set
forth, also contracted typhoid fever on the 15th day of
October, 1919, to the appellants' damage, items of which
were specified, in the sum of $3,000; that Walker Davis,
another minor son, on October 15, 1919, from the same
cause, contracted the disease and thereafter died, to ap-

pellants' damage, which they specified, in the sum of
$3,000; that appellant J. L. Davis, also by reason of the
negligence of appellees as above set forth, contracted
the disease, from which he suffered physical pain and
mental anguish, which rendered him unable to perform
his regular work, impaired his health permanently, de-
creased his earning power and compelled him to incur
debts for medicine, nursing and doctors' bills, all to his
damage in the sum of $3,000. The complaint concludes
with a prayer for judgment in the sum of $3,000. The
appellees entered a general demurrer to the complaint.
The court entered judgment sustaining the demurrer and
dismissing the complaint, and for costs in favor of the
appellees, from which judgment is this appeal.

1. Typhoid fever is an infectious febrile disease
caused by a micro-organism called *bacillus typhosus,*
introduced into the system by the fingers, or with the
food or drinking water. Osler's Principles and Practice
of Medicine, 1-5; Forcheimer's Therapeusis of Internal
Diseases, vol. 5, p. 203; (Webster's Dictionary; New In-
ternational Dictionary—Typhoid Fever). It is declared
by the State Board of Public Health to be "contagious,
infectious, and communicable." Rules and Regulations
of the State Board of Health, p. 5, § 11.

A contagious disease is one communicable by con-
tact with a patient suffering from it, or with some secre-
tions or object touched by such a patient. (Webster
"Contagious.") "Fingers, food, water and flies are the
chief means of propagation." Osler's Principles and
Practice of Medicine, 5.

Keeping in mind these definitions of infectious and
contagious diseases, and their means of propagation, we
have reached the conclusion that the allegations of the
complaint do not state facts sufficient to show that any
of the acts of negligence alleged were the proximate cause
of the typhoid fever contracted by the appellants and
their children. It is not alleged in the complaint that
typhoid fever is an infectious disease. While there is an
allegation to the effect that the appellees "failed to have

buried or disinfected the secretions and excretions from the bodies of the patients," there is no allegation to the effect that such failure caused the typhoid germs to get into the food or water used by appellants and their children, or in any other manner to be introduced through the mouth into the intestines of the victims of the disease. Moreover, there is no duty imposed upon physicians by statute to personally bury, or disinfect, the secretions or excretions of their typhoid fever patients.

The State Board of Health requires that "no person in charge of a typhoid fever patient shall so dispose of the excreta or other infectious bodily secretions or excretions as to cause offense or danger to any person or persons." R. & R. of State Board of Health, 1918, p. 16, § 89.

If it be conceded that this section makes it the duty of physicians to instruct those in immediate charge of a patient to dispose of the excretions and secretions in the above manner, still there are no allegations of fact which show that the failure to discharge that duty was the proximate cause of the communication of the disease to appellants and their children. In other words, it is not alleged that the failure of the physician to instruct the nurses or attendants in charge of the patient caused such nurses or attendants to dispose of the excretions and secretions, so that the water which appellants and their children drank, and the food they ate, became infected thereby with the typhoid bacillus.

It is undoubtedly the duty of physicians who are attending patients afflicted with contagious or infectious diseases not to negligently do any act that would tend to spread the infection. It would likewise be their duty to exercise reasonable care to advise members of the family and others, who are liable to be exposed thereto, of the nature of the disease and the danger of exposure. The relation of a physician to his patient and the immediate family is one of the highest trust. On account of his scientific knowledge and his peculiar relation, an attending physician is, in a certain sense, in custody of a

patient afflicted with infectious or contagious disease. And he owes a duty to those who are ignorant of such disease, and who by reason of family ties, or otherwise, are liable to be brought in contact with the patient, to instruct and advise them as to the character of the disease.

It is a sound rule of law that one who by reason of his professional relation is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger, is liable in damages to those who are injured by reason of his failure to exercise such care. *Skillings* v. *Allen,* 5 A. L. R., p. 922 and note. It was, therefore, the duty of the appellees, when called to attend the children of appellants, to notify the latter, other nurses and attendants, of the nature and character of the disease, to warn them of the danger of infection, and to instruct them as to the usual methods approved by the profession, of which they have knowledge, for the prevention and spread of the disease. This duty was incumbent upon the appellees, regardless of the rules and regulations of the State Board of Health on the subject. 30 Cyc. p. 1577; 21 R. C. L., § 33, p. 389. But it was not the duty of appellees as physicians to enforce the rules of the State Board of Health for the prevention of typhoid fever. That was the duty of local health officers. R. & R. of State Board of Health, p. 16, R. 90.

It is alleged in the complaint that "appellees negligently failed to instruct said patients, their attendants, the plaintiffs, and other nurses that the patients had typhoid fever, a contagious disease, or as to what were necessary sanitary precautions for them to observe and practice to prevent the spread of said disease." There is no allegation of fact to show that the alleged negligence of the appellees in the respects named caused appellants' children to contract the disease. The general allegations that "appellees encouraged people to come in contact with their patients," and that grossly negligent acts of defendants conduced to infect plaintiffs and

their families with typhoid fever germs," are not sufficient. There is no allegation that if the warning and instructions had been given appellants could and would have heeded and obeyed them. Specific acts and facts showing how and why the alleged negligence of appellees was the proximate cause of the injury of which the appellants complain, were necessary to be stated. These can not be supplied by intendment.

2. One of the rules of the State Board of Health requires "every physician to report, as soon as possible, every case of communicable disease, declared notifiable, which occurs in his practice, to the local city and county health officer having jurisdiction." Typhoid fever is such a disease. It is made a misdemeanor for any person to violate this rule. R. & R. State Board of Health 1918, p. 6, rule 12; Act 96, p. 360 of Acts 1913.

It is alleged that the appellees negligently failed to comply with this rule. But again there is no allegation of specific acts or facts showing that the failure of appellees to perform this statutory duty was the proximate cause of the injury to appellants. There is no allegation that, if appellees had complied with this rule, appellants and their children would have escaped typhoid fever. Violation of the rule was evidence of negligence. *Bain* v. *Fort Smith L. & T. Co.,* 116 Ark. 125; *Pankey* v. *Little Rock Ry. & Elec. Co.,* 117 Ark. 337-44. But such violation was not actionable negligence creating civil liability unless it was the proximate cause of the injury to appellants. The necessary facts and acts to show this are not alleged.

3. Appellees were negligent in advising appellants to move their son, Lawson Davis, from his residence to appellants' residence, and telling them that they could put him among the other children where he could see his little brothers and sisters. *Skillings* v. *Allen, supra; Hewett* v. *Woman's Hospital Aid Assn.,* 73 N. H. 556, 7 L. R. A. (N. S.) 496-99. Assuming this allegation to be true, which we must on demurrer, such instructions coming from attending physicians without warning of

the danger of infection to the other children of the appellants, were acts of gross negligence. But here again specific acts and facts are not alleged which show how or why this advice and these instructions caused the injury to appellants. On the contrary, it is alleged that typhoid fever was a contagious disease, and that the appellants had nursed their son, Curtis Davis, before he was removed to the residence of the appellants; and other allegations show that appellants were in attendance upon him before the appellees were called to his bedside. Now, "the period of incubation for typhoid germs lasts from eight to fourteen days, sometimes twenty-three." Osler, P. & P. Med. 14. An allegation further shows that one of the appellants, N. A. Davis, was infected with typhoid germs on the 12th day of October, 1919, three days before any of the minor children of appellants became infected with the disease. According to this allegation, the minor children were affected on the 15th day of October, 1919. Therefore, according to the allegations of the complaint, the appellants may have contracted the disease before either of their adult sons were moved to the residence of appellants, and the minor children may have contracted the disease from their mother, rather than from their elder brother. For she had voluntarily exposed herself and had come down with the fever before the minor sons were attacked.

To fix civil liability for so serious a delinquency as that set forth in the complaint, it was necessary to allege specific acts and facts showing that the injury to appellants was caused directly and approximately by such delinquency. Here the allegations show that appellants may have contracted the disease before appellees advised appellants to move their adult son, and the minor sons may have contracted the disease from their mother, rather than from their brother. Therefore, the source of infection of the minor children is not definitely traced to any act of negligence of appellees. The allegations on this vital subject are not sufficient to state a cause of action.

4. It is alleged that the appellees negligently failed to vaccinate the appellants, their minor children, attending nurses and other persons who had been exposed to the disease. The term "vaccinate" is here loosely used by the pleader for "inoculate." In the first place, the appellees could not inoculate the appellants, or their minor children, without appellants' consent. It is not alleged that appellants requested appellees to "vaccinate" them or their children, or that appellants would have consented thereto if appellees had suggested it. In the second place, in the absence of a statute requiring it, whether inoculation shall be resorted to as a means for preventing the spread of contagious or infectious diseases is a matter addressed solely to the independent judgment and discretion of the attending physician. It can not be said that the efficacy of inoculation of a specific vaccine to prevent the spread of typhoid fever has been so thoroughly established by medical science as to make it the absolute duty of physicians to inoculate nurses, attendants and persons exposed during an epidemic of that disease.

The medical authorities cited in the briefs of learned counsel for the respective parties to this litigation show that doctors themselves differ as to whether inoculation would furnish complete immunization against typhoid fever. Although the majority of eminent medical authorities now advocate inoculation as a preventive of typhoid fever, yet, until it has been demonstrated beyond doubt that inoculation affords complete immunization against the disease, it must be left to the judgment and discretion of the physician, under the circumstances of each particular case, to determine whether inoculation is necessary. Tyson's Practice of Medicine (5 ed.), p. 126; 2 Forcheimer's Practice of Medicine; Sajous' Ency. of Medicine; Osler, P. & P. of Med. 41; 5 Forcheimer's Therapeusis of Internal Diseases, 201. Matters of this kind require scientific investigation and expert knowledge to determine. It can not be left to a jury to say whether

the expert in the practice of his profession has pursued the proper course.

The judgment is correct, and it is therefore affirmed.