Regis O’Brien, J.
This is a motion for an order to dismiss the first cause of action of the plaintiff, Joseph Wojcik, individually, as alleged in paragraphs First through Thirteenth of the complaint. It is made under rule 107 of the Rules of Civil Practice, upon the ground that the court has no jurisdiction of the subject matter of the action. Defendant claims that the plaintiff’s exclusive remedy is under the Workmen’s Compensation Law.
There is also a motion before the court for an order to dismiss the cause of action of the plaintiff, Caroline Wojcik, the wife of plaintiff, Joseph Wojcik, as alleged in paragraphs Fourteenth through Eighteenth of the complaint. The latter motion is made under rule 106 of the Rules of Civil Practice, upon the ground that her alleged cause of action does not state facts sufficient to constitute a cause of action.
*741 A previous motion for an order to dismiss the complaint herein under rule 106 of the Buies of Civil Practice was denied by Mr. Justice Kramer. It does not appear that any appeal was taken from this order dated January 20, 1959.
The present motion under rule 107, which is directed against the cause of action alleged by the plaintiff, Joseph Wojcik, as aforesaid, presents two questions. The first is whether his exclusive remedy is under the Workmen’s Compensation Law and, secondly, if not, has he alleged a common-law action in tort against the defendant?
The plaintiff, Joseph Wojcik’s first cause of action alleges that he was employed by the defendant; that at various times between November 18, 1942 and March 29, 1956, “ the defendant, by its officers, servants, agents and employees did request and order X-rays taken of the chest of this plaintiff that plaintiff, pursuant to the order and request of defendant, submitted to and had various X rays taken of his chest and body; that the X rays and physical examinations were undertaken gratuitously by the defendant, both for the benefit of the defendant and for the welfare of the plaintiff; that it was the practice of the defendant to advise its employees of any irregularities, illnesses or abnormalities which the examinations or X rays disclosed; that the plaintiff relied upon the defendant advising him of any disease or illness he might have or that might be imminent; that ‘ ‘ in reliance upon the defendant’s examination and X-rays, plaintiff did forego examinations and X-rays and treatment by others that the defendant negligently and willfully failed to advise the plaintiff of the results of the X-ray examinations which had disclosed irregularities and conditions of which the plaintiff should have been advised; that the defendant discovered' and had knowledge on July 6, 1955, that the plaintiff had developed, or was developing, tuberculosis and negligently, carelessly and recklessly failed to inform him of the condition; that the defendant, its agents, servants and 'employees were negligent, careless and reckless in not promptly advising plaintiff, especially after the X rays were taken on July 6, 1955, that he had or was developing tuberculosis, and in not taking additional X rays or advising him to have additional X rays taken; and in not advising him to take a sick leave, and in allowing him to continue to work; and in allowing him to continue living with his family at a time when he had a contagious disease; and in allowing him to rely upon defendant’s policy of advising its employees, including the plaintiff, of any illnesses or physical defects discovered.
*742 The affidavit submitted as part of the moving papers admits the numerous physical examinations of the plaintiff but alleges that they were performed by physicians who were independent contractors. This statement that the physicians were independent contractors is a conclusion and cannot prevail on this motion over the direct allegations of the complaint that the X rays were taken and the physical examinations made by officers, agents and employees of the defendant.
It is pertinent that the plaintiff does not allege that he sustained any physical injury or disability arising out of or in the course of his employment, or that he contracted any occupational disease in such employment. There is no allegation in plaintiff’s cause of action that he contracted the disease while employed by the defendant or that the disease was aggravated by such employment. Likewise, there is no such claim made in the affidavit submitted by the defendant.
An employee’s exclusive remedy under section 11, and subdivision 6 of section 29 of the Workmen’s Compensation Law which relates to injuries or death caused by a fellow employee, applies only to disabilities, deaths or diseases within the purview of the statute. The statute does not foreclose an employee from maintaining an action at common law to recover damages for the employer’s tortious acts committed during the course of the employment when such acts are outside the contemplation and coverage of the Workmen’s Compensation Law. This principle of law is established by numerous decisions.
In Barrencotto v. Cocker Saw Co. (266 N. Y. 139) the court held that the exclusive remedy provisions of the Workmen’s Compensation Law did not preclude an employee from maintaining an action against his employer when he had developed, in the course of his employment, a dust disease before dust diseases were included in the occupational diseases covered by the Workmen’s Compensation Law. The court said (p. 146): “ There still is a field in which the statute fails to impose liability, on the part of an employer, to provide compensation for injury or death, regardless of fault; and in which an injured person may seek damages by action at law, where there has been fault.” In Legault v. Brown (283 App. Div. 303 [4th Dept., 1954]) the court held that the plaintiff could not maintain an action for damages against his employer for willfully and unlawfully placing bim in a perilous position resulting in personal injuries to him after he had accepted and retained benefits under the Workmen’s Compensation Law. The court, however, stated (p. 305): “ As to the appellant’s first point, we are not prepared to hold, in the absence of controlling authority, that an employee may not *743 maintain a common-law action against an insured employer, for an intentional, willful, wanton and malicious assault by his employer, even where it occurred during the course of and within the scope of the employment. There is authority that such an assault is not an ‘ accidental injury ’ within the meaning of subdivision 7 of section 2 of the Workmen’s Compensation Law and that, therefore, the liability of the employer as provided for in the statute, is not the exclusive liability.” (Numerous cases cited.)
In Lavin v. Goldberg Bldg. Material Corp. (274 App. Div. 690) the court held that plaintiff was entitled to recover from the employer of her intestate damages for personal injuries sustained by him when assaulted by a coemployee even though the employer carried workmen’s compensation insurance. The court, in construing the complaint, said that it charged that a willful and intentional assault was perpetrated upon plaintiff’s intestate by the individual defendant as the agent of and at the instigation of the corporate defendant. The Lavin case was followed .in Quinn v. S. A. Mealy Co. (140 N. Y. S. 2d 925 [Supreme Ct., Bronx County, 1955]).
The following cases are clearly pertinent to the above-discussed principle of law: Volk v. City of New York (284 N. Y. 279, 283); Matter of Berenberg v. Park Mem. Chapel (286 App. Div. 167, 169); Wolfson v. Gershunoff (277 App. Div. 1149); Fener v. Chapman (274 App. Div. 776); Robison v. State of New York (263 App. Div. 240); De Coigne v. Ludlum Steel Co. (251 App. Div. 662); Riste v. General Elec. Co. (47 Wn. [2d] 680); Dudley v. Victor Lynn Lines (48 N. J. Super. 457).
The second question is whether the above-alleged cause of action states a cause of action. This question is not necessarily answered by the decision of Justice Kramer who held upon the motion made under rule 106 of the Civil Practice Act that the complaint alleging nine different causes of action “ states facts sufficient to constitute a cause of action. ’ ’
This cause of action, as hereinabove stated, in brief, alleges plaintiff’s employment by the defendant, the gratuitous physical examinations and X rays made by the defendant, the general practice of the defendant of informing its employees of any disease, symptoms or irregularities discovered upon such examinations, the plaintiff’s reliance upon that practice, the defendant’s discovery of plaintiff’s tubercular condition, the defendant’s negligent, careless, reckless and’willful failure to inform the plaintiff of his tubercular condition, the plaintiff’s reliance upon the examinations and X rays made by the defendant and plaintiff’s inducements to refrain by reason thereof from having *744 other examinations and X rays taken and the consequent development of the disease of tuberculosis and plaintiff’s continuance at work and his continuance to live with his family while afflicted with the contagious disease. These allegations, in the court’s opinion, state a cause of action at common law, within the principles of law enunciated in the authorities hereinafter cited and discussed.
In the Restatement of the Law of Torts (Yol. 2, § 325) it is stated: “ One who gratuitously undertakes with another to do an act or to render services which he should recognize as necessary to the other’s bodily safety and thereby leads the other in reasonable reliance upon the performance of such undertaking (a) to refrain from himself taking the necessary steps to secure his safety or from securing the then available protective action by third persons, or (b) to enter upon a course of conduct which is dangerous unless the undertaking is carried out, is subject to liability to the other for bodily harm resulting from the actor’s failure to exercise reasonable care to carry out his undertaking.”
The cause of action under consideration appears to be patterned upon the pleading before the court in Union Carbide & Carbon Corp. v. Stapleton (237 F. 2d 229 [C. C. A. 6th, 1956]) in which the court in affirming the judgment for the plaintiff stated (pp. 232-233): “ The point is made by appellant’s counsel that an employer is under no obligation whatever to determine an employee’s physical condition in the first place, and that the appellant should not be penalized for voluntary undertaking more than its legal duty. That the appellant had no obligation to give Stapleton a physical examination we can accept without qualification. But, when it undertook to do so, Staple-ton was entitled to and did rely on the expectation that he would be told of any dangerous condition actually disclosed by that examination. The appellant was therefore liable for injury to Stapleton caused by negligent omission to advise him of his tubercular condition. Prosser on Torts, § 38, pages 185-188 (1955 Ed.); Restatement of Torts, § 325; Perrone v. Pennsylvania R. Co., 2 Cir., 1943, 136 F. 2d 941, 943; Conowingo Power Co. v. State of Maryland, 4 Cir., 1941, 120 F. 2d 870, 874.”
In Zelenko v. Gimbel Bros. (158 Misc. 904, affd. 247 App. Div. 867) the court said (p. 904): “Plaintiff’s intestate was taken ill in defendant’s store. We will assume that defendant owed her no duty at all — that defendant could have let her be and die. But if a defendant undertakes a task, even if under no duty to undertake itf the defendant must not omit to do what *745 an ordinary man would do in performing the task.” In Salvati v. Salvati (123 N. Y. S. 2d 678 [Supreme Ct., Westchester County, 1953]) the court said (p. 680): “But, it is also held that notwithstanding there is no affirmative duty to act in the first instance, a volunteer undertaking to perform a deed gratuitously must exercise due care in the performance thereof. £ It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.’ Glanzer v. Shepard, 233 N. Y. 236, 239 * * * Thus, notwithstanding it is the rule that there is, in the absence of special circumstances, no duty owing by one to aid or assist another who is injured or sick, there is authority for the proposition that he who actually takes charge of an injured person is liable for a failure to do what an ordinary prudent person would do under the circumstances. He may be held liable for unreasonable delay in securing medical attention for the injured.” (Cases cited.) (See, also, Siegel v. Spear & Co., 234 N. Y. 479, 483; Span v. Ely, 8 Hun 255; 38 Am. Jur., Negligence, § 17, p. 659.)
The statement in the affidavit submitted by the defendant that the examinations were performed by physicians does not in any manner exonerate defendant from liability to the plaintiff for under the allegations of the complaint the physicians were agents of the defendant. As physicians it was their duty upon discovering that plaintiff had tuberculosis, a communicable disease, to report that fact to the local authorities from whom plaintiff presumably would have learned of his condition (Public Health Law, § 2101; § 2222, subd. 1; State Sanitary Code, ch. II, reg. 11).
There remains the motion under rule 106 against the cause of action of the plaintiff, Caroline Wojcik. The question as to whether her allegations state a cause of action is not necessarily resolved by the decision of Justice Kramer hereinabove mentioned. She realleges the allegations of her husband’s cause of action. She further alleges that due to defendant’s negligence, she came in close contact with her husband and lived with him in the same home as man and wife; that if defendant had advised her regarding her husband’s true physical condition,the same would have been attended and treated and immediate and proper steps would have been taken to avoid her contracting. the disease; that early and prompt medical attention would have been received by her and that by reason of defendant’s negligence she sustained serious, painful and probably permanent injuries to her damage in the sum of $50,000. It *746 is the court’s opinion, in view of the authorities discussed herein, that the plaintiff has stated facts sufficient to constitute a cause of action.
It is common knowledge that tuberculosis is a contagious and communicable disease. The risk of the plaintiff wife contracting tuberculosis from her husband, when unaware that he was so afflicted, was reasonably foreseeable by the defendant. Such a risk is within the range of probability and apprehension of an ordinarily prudent person. The defendant’s negligent conduct toward the plaintiff husband under the circumstances was negligence to the plaintiff wife. In Schmidt v. Merchants Dispatch Transp. Co. (270 N. Y. 287, 300) Lehman, J., said: ‘ ‘ Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time (cf. Ehret v. Village of Scarsdale, 269 N. Y. 198); and then only through new, fortuitous conditions.”
In Ehret v. Village of Scarsdale (269 N. Y. 198) the defendant village was held liable in damages for the death of plaintiff’s deceased who was asphyxiated by gas escaping from a leak in a street gas main laid in a drain pipe with the consent of the village by the codefendant. The court said (p. 207): “ The orbit of danger was undefined, both in time and space. In fact, no damage resulted from the negligent act for almost a year, and then the damage occurred almost simultaneously in two separate houses at considerable distance from each other and from the point of the leak. None the less, the damage was the result of a danger which could have been anticipated by the exercise of reasonable foresight.”
So here, the defendant could have reasonably anticipated that the plaintiff husband, without knowledge of his contagious disease, would not take the precautionary measures necessary to prevent infecting others, including his wife, with the germs of the disease.
In American Jurisprudence, Physicians and Surgeons (Yol. 41, § 101, p. 216) it is stated: “ One who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger is liable in damages .to those injured by reason of his failure to do so.” The policy of the law in general is stated in Corpus Juris Secundum, Physicians and Surgeons (Yol. 70, § 48, p. 970) as follows: “ It is the duty of a physician who is attending a patient afflicted with a contagious or infectious disease to exercise care in advising and warning members of the family and others who are liable to exposure of the existence and nature of the danger from the disease, to avoid doing *747 any act which would tend to spread the infection, and to take all necessary precautionary measures to prevent its spread to other patients attended. A physician who fails to give such warning is negligent, and is liable in damages to any person injured as the direct and proximate'result of his negligence.”
The plaintiff, Caroline Wojcik, the wife of the plaintiff Joseph Wojcik whom the doctors, as agents of the defendant, discovered was infected with tuberculosis, a contagious disease, is clearly within the ambit of the duty and the liability of these agents. (See the following decisions: Davis v. Rodman, 147 Ark. 385, 391-395; Skillings v. Allen, 143 Minn. 323, 325-327; Jones v. Stanko, 118 Ohio St. 147; Edwards v. Lamp, 69 N. H. 599; Piper v. Menifee, 51 Ky. 465.)
The motions to dismiss the first cause of action of plaintiff, Joseph Wojcik, and the cause of action of the plaintiff, Caroline Wojcik, are denied.
Submit order.